Amy Yeh, Esq., SBN 228174
**LAW OFFICES OF AMY YEH**
1012 W. Beverly Blvd. #882
Montebello, CA 90640
Telephone: (626) 869-9841
Email: *ayeh@amyyehlaw.com*

Attorneys for Plaintiff Pet Sit Pros, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PET SIT PROS, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>PET SITTING PROFESSIONALS, LLC, a California Limited Liability Company; FRANCISCO JAVIER FERNANDEZ, an individual; and DOES 1-25, Inclusive,<br><br>Defendants. | Case No. 2:16-CV-5727<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT; UNFAIR COMPETITION; FALSE DESCRIPTION; INJURY TO BUSINESS REPUTATION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Pet Sit Pros, Inc. ("Pet Sit Pros" or "Plaintiff"), by its attorneys the Law Offices of Amy Yeh, sues Defendants Pet Sitting Professionals, LLC, Francisco Javier Fernandez, and DOES 1 through 25, and alleges as follows:

**I.**

**JURISDICTION AND VENUE**

1.  This is a complaint for Trademark Infringement and False Description arising under sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1) (Trademark Infringement) and 1125(a) (Unfair Competition and False Description) and for Injury to Business Reputation.

2.  This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 331 and 1338(a) and 15 U.S.C. § 1121. This Court has

related claim jurisdiction over the state law tort claim pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

3. This Court has personal jurisdiction over Defendant Pet Sitting Professionals, LLC because it is a California Limited Liability Company that maintains its principal place of business in the State of California. This Court has personal jurisdiction over Defendant Francisco Javier Fernandez because Mr. Fernandez is a resident of the State of California.

4. Venue is proper in this district under 28 U.S.C. § 1391(a), in that all of the Defendants are subject to personal jurisdiction in this district at the time the action is commenced, and under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district, a substantial part of the property that is the subject of the action is situated in this district, and the Defendants maintain their principal place of business in this district and reside in this district.

## II.

## THE PARTIES

5. Pet Sit Pros is, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of California, having a principal place of business in Los Angeles County, California.

6. Upon information and belief, Defendant Pet Sitting Professionals, LLC is, and at all times mentioned herein was, a limited liability corporation organized and existing under the laws of the State of California, having a principal place of business in Los Angeles County.

7. Upon information and belief, Defendant Francisco Javier Fernandez is an individual and a resident of the State of California.

8. Pet Sit Pros is unaware of the true names and capacities of defendants sued herein as DOES 1 through 25, inclusive, and therefore sues these defendants by such fictitious names. Pet Sit Pros will amend this complaint to alleged their

true names and capacities when ascertained.  Pet Sit Pros is informed and believes and therefore alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and Pet Sit Pros' injuries as herein alleged were proximately caused by such defendants.  These fictitiously named defendants, along with the defendants named above, are herein referred to collectively as "Defendants."

## III.

## FACTUAL BACKGROUND

### Creation of Pet Sit Pros

9. Pet Sit Pros – Long Beach, the predecessor to Pet Sit Pros, began as a small pet sitting and dog walking company in Long Beach, California.  From its inception, the company was known as Pet Sit Pros – The Pet Sitting & Dog Walking Professionals.

10. The spark that launched the company came from a bad pet care experience and a desire to create the best model for professional pet care possible.  In the summer of 2008, Pet Sit Pros' founder, Jason Goldfischer, left his dog, Kina, at a local kennel when he went out of town for a week.  He called regularly to check up on how she was doing and was told by the staff that she was doing great.  When Mr. Goldfischer picked up Kina, she was clearly stressed, had lost 9 pounds and had contracted Giardia.  The venterinary bills far surpassed the cost of kenneling for his trip.  He thought there had to be a better option for pet care.

11. Mr. Goldfischer searched online and asked around for referrals for people who would stay in his home with Kina the next time he was away.  After much searching, he found a former student that he trusted to stay at his home with Kina and left for a long weekend, knowing she was in good hands.  He returned to a happy and healthy dog and a well-cared for home and had been reassured throughout his trip with picture texts and messages.  Thus, the idea for providing professional in-home pet care services as the best option for pets was born.

12. For the next two years, Mr. Goldfischer developed a technology based professional pet sitting service where clients could schedule their services online, get invoiced electronically, pay by credit card online and be in constant communication with his clients while they are away. Mr. Goldfischer and two part time staff members provided pet sitting services to local families during the summer, on weekends and before and after their regular jobs. He spent many hours developing the Pet Sit Pros brand and reputation for professional pet care services and the promise that "we will never tell our clients we are unavailable to them."

**Expansion of the Pet Sit Pros Brand**

13. In the Fall of 2010, Mr. Goldfischer expanded his team of pet sitters, added mid-day dog walking services and worked to expand the Pet Sit Pros clientele. What followed was quick expansion as marketing campaigns, a new professional website, brand awareness, client referrals, expanded service area and sound business principles began to pay off. In less than 2 years, Pet Sit Pros went from a fledgling start-up to the premier pet sitting and dog walking service in the area, serving over 500 client families with 10 pet sitters and dog walkers.

14. In 2012, wishing to expand this success beyond the local market, Pet Sit Pros expanded by setting up new service territories in Orange County, then chose franchising as the next step. Through adherence to the founding principles, practices, procedures, trade secrets and training formula, Pet Sit Pros continued on the path of growth, becoming an award-winning company with major brand recognition and loyalty throughout Southern California.

15. Pet Sit Pros set out early to protect its brand from infringement. In 2012 and 2013, Pet Sit Pros started the process of setting up a nationwide franchising company to license its business model and brand to franchisees across the nation. In November of 2012, the United States Patent and Trademark Office ("USPTO") approved a federal trademark for Pet Sit Pros under the individual, Jason Goldfischer. In December of 2012, Pet Sit Pros filed for corporate status

with the State of California and registered the S-Corp Pet Sit Pros, Inc. Mr. Goldfischer is the President and CEO of Pet Sit Pros. In April of 2013, after the corporate registration was completed, Mr. Goldfischer transferred ownership of the Pet Sit Pros trademark to the corporate entity, Pet Sit Pros, Inc., with the USPTO.

16. Pet Sit Pros' employee contracts included trade secrets and confidentiality agreements. Its franchise owners are also contractually obligated to have all their employees sign trade secrets and confidentiality agreements to protect Pet Sit Pros' brand, trademark and trade secrets.

17. Pet Sit Pros published a Pet Sit Pros – Operations Manual in 2013, at great expense, to aid its franchise owners in opening their new businesses, establish a marketing plan, expand their businesses profitably, provide guidelines for using the Pet Sit Pros mark within the licensing agreement and the daily operations of their Pet Sit Pros businesses.

18. In early 2014, Pet Sit Pros hired a professional design company to completely rebrand the company's logo and image to better represent its regional and soon to be national brand. Pet Sit Pros – The Pet Sitting & Dog Walking Professionals created a whole line of marketing collateral for use by the corporate and franchise-owned locations, including multiple websites, a mobile application, custom images and marketing campaigns for use in Yelp, Facebook, Twitter and Instagram marketing, print materials including catalogs, business cards, brochures, report cards, key chains, pens, event displays including 10' x 10' canopy tents, tables and tablecloths, flags, banners and backdrops as well as apparel items such as hats, beanies, t-shirts, polo shirts, tank tops, sweatshirts and bandanas. Each item in Pet Sit Pros' marketing collateral lineup included the Pet Sit Pros logo, its tagline, "The Pet Sitting & Dog Walking Professionals" and the Trademark Symbol to show that this brand operates under a registered trademark.

19. Pet Sit Pros invested around $300,000 in the building of the Pet Sit

Pros brand and the legal tools to protect it from trademark infringement and trade secrets theft.

20. The current value of the Pet Sit Pros brand is estimated to be between $5-10 million.

**Success of Pet Sit Pros**

21. Today, Pet Sit Pros – The Pet Sitting & Dog Walking Professionals, through its three corporate-owned locations and five franchise-owned locations, offers nearly contiguous in-home pet care services including pet sitting and dog walking in its Southern California service area. Pet Sit Pros' service locations in Southern California include Santa Monica, Marina del Rey, Long Beach, Lakewood, Seal Beach, Huntington Beach, Newport Beach and South Orange County. Its geographic service locations span a nearly contiguous corridor of 75 miles from Santa Monica in the north to the southern and eastern edges of Orange County in the south. In total, Pet Sit Pros employs around 20 employees, as staffing is constantly changing throughout its service areas. Through its eight service locations, Pet Sit Pros in-home pet care services are available to well over 2 million residents in Southern California and its award-winning brand and service have been recognized through many awards year after year.

22. The accolades began coming in prior to 2012, after rocketing to #1 customer rated placement on Yelp.com. Yelp is a website where customers can search for service-oriented businesses and read real uncensored user reviews from actual clients. Pet Sit Pros – The Pet Sitting & Dog Walking Professionals was awarded the "People Love Us On Yelp" and "People Really Love Us on Yelp" awards for 2011, 2012, 2013, 2014 & 2015.

23. Pet Sit Pros won the award for Get OUT Long Beach's Best of Long Beach "Best Pet Sitting Services" Award for 2013 & 2014.

24. Barks of Love Animal Rescue bestowed Pet Sit Pros with an award for "Most Reliable Pet Sitter & Dog Walker".

1  25. The Long Beach Press Telegram, the local Long Beach, CA
2  newspaper recognized our company as a "2015 Reader's Choice Favorite" in the
3  Pet Sitting category in 2015.
4  26. Orange County Hot List, the most prestigious list of service businesses
5  in Orange County comes out with its annual list of the hottest businesses. The 2014
6  list ranked the Pet Sit Pros of South Orange County location #1 in the Best Pet
7  Sitting category and #2 in the Best Dog Walker category. Meanwhile, in the same
8  contest the Pet Sit Pros of Huntington Beach location was awarded #2 in the Best
9  Dog Walker category, beat out only by the Pet Sit Pros of South Orange County
10 location.
11 27. In the annual Best of Huntington Beach program, Pet Sit Pros has been
12 awarded Best Dog Walker for four consecutive years, 2013, 2014, 2015 and 2016.
13 28. In the annual Best of Long Beach program, Pet Sit Pros has been
14 awarded Best Pet Sitter for four consecutive years, 2013, 2014, 2015 and 2016.
15 29. The most prestigious ranking for the company came about in April of
16 2016 when Entrepreneur's Start Up Magazine, an important periodical in the
17 business world, recognized Pet Sit Pros Inc. as one of the "218 Hottest Businesses
18 for 2016" in the entire United States.

19 **Francisco Javier Fernandez and Pet Sitting Professionals, LLC**

20 30. Francisco Javier Fernandez became an employee of the original Pet Sit
21 Pros Long Beach location in November of 2012. This business was registered with
22 the State of California as Pet Sit Pros Long Beach, LLC in December of 2012.
23 Jason Goldfischer is the President and CEO of Pet Sit Pros Long Beach, LLC.
24 31. From about June to November 2012, Mr. Fernandez did a little bit of
25 contracting work for the company. Beginning in November 2012, he was a part
26 time employee who provided in-home pet care to Pet Sit Pros' clients, including pet
27 sitting and dog walking services, in the Long Beach, Lakewood and Seal Beach
28 service locations. His work was part time because he had at least two other jobs,

which took up much of his time.  Mr. Fernandez often took off for extended periods for obligations connected to his other jobs.

32. When he became an employee, Mr. Fernandez was provided with the Pet Sit Pros employee training and provided with a copy of the Pet Sit Pros Employee Training Manual.  This training includes many trade secrets, including Pet Sit Pros' formula for visit routines, procedures, safety standards and communications expectations, which ensure that each pet visit is performed uniformly and with the highest service standards so that regardless of which employee is assigned to a job, the client will always experience the same excellent level of service.  This uniform procedure has been the key to the success of Pet Sit Pros and is what makes its service different than other similar services.  When Mr. Fernandez' left Pet Sit Pros, he failed to turn in his Employee Training Manual, as required.

33. In the Spring of 2014, Mr. Fernandez asked to be made a full time employee.  At the time, Pet Sit Pros was experiencing extremely high growth of over 40% year over year so the company decided to create a salaried General Manager position for the Long Beach, Lakewood, Seal Beach, Huntington Beach and Newport Beach service locations and to offer Mr. Fernandez the job.  In the summer of 2014, Mr. Fernandez accepted the General Manager position and signed a new contract, which included a Non-Solicitation clause and a Trade Secrets and Confidentiality agreement.

34. As General Manager, Mr. Fernandez was responsible for managing the day-to-day operations of the Long Beach, Lakewood, Seal Beach, Huntington Beach and Newport Beach service areas.  He was trained in all of the Pet Sit Pros policies, procedures and trade secrets regarding marketing, onboarding new client families, client retention, customer service, visit routines, safety standards, training and managing employees and everything that the Pet Sit Pros franchise owners received when purchasing and executing a franchise agreement and franchise

license. Mr. Fernandez was given a Pet Sit Pros iPhone and Pet Sit Pros iPad for business use and access to the company's client management system, client records and client lists. Mr. Fernandez also received a copy of the Pet Sit Pros Manager Training Manual, which he also did not return when he left the company, as required.

35. In late December of 2014, the company had to eliminate the General Manager position as Pet Sit Pros was negotiating the transfer of ownership of the Huntington Beach and Newport Beach service locations from Pet Sit Pros Long Beach, LLC to the South Orange County franchise owners, Pet Sit Pros of South Orange County, LLC.

36. Francisco Javier Fernandez was laid off by Pet Sit Pros Long Beach, LLC on or about December 27, 2014. On his last day, Mr. Fernandez returned most of his Pet Sit Pros apparel, most of his marketing collateral, Pet Sit Pros iPad and Pet Sit Pros iPhone. At the time, he said that he had other items stored at a different location as he was in the process of moving and he promised that he would return them at a later time, but he never did. He did not return his Employee Training Manual or his Manager Training Manual. He also kept a digital and paper client list and phone numbers and had saved Pet Sit Pros' client contact information in his personal iPhone. It was a common thing for Mr. Fernandez to run client lists to facilitate marketing campaigns during his time as General Manager. These lists were not returned or digitally deleted when he left. Mr. Fernandez' passwords for accessing the company's client management system, client lists and his Pet Sit Pros e-mail account were immediately changed so that he could no longer access any of the company's client information, but the damage had already been done.

37. After he left the company, Mr. Fernandez used Pet Sit Pros' client lists to call and solicit away many of its best clients in specific violation of his contract, which included a non-solicitation clause and a trade secrets and confidentiality agreement. Mr. Fernandez also used the confidential information in the training

manuals he kept, along with the client lists and client contact information that he took, to start his own competing in-home pet care business, which offers the same services as Pet Sit Pros.

38. In October of 2015, Mr. Fernandez filed for corporate status with the State of California for the entity "Pet Sitting Professionals, LLC." Pet Sit Pros is known as "Pet Sit Pros – The Pet Sitting & Dog Walking Professionals." All of Pet Sit Pros' logos and all marketing materials include its tagline and the words "The Pet Sitting Professionals," dating back all the way to 2008. The tagline is an integral part of the Pet Sit Pros brand identity and the trademark of Pet Sit Pros.

39. On or around the Fall of 2015, Defendants launched a website marketing its services at www.petsittingpros.com. The Pet Sit Pros website is www.petsitpros.com. Defendants' actions infringe on the trademark of Pet Sit Pros, create confusion in the marketplace for consumers and tricking them into believing that Pet Sitting Professionals, LLC is, or represents, the award-winning Pet Sit Pros brand.

40. Mr. Fernandez has already violated the terms of his non-solicitation agreement by soliciting clients away from Pet Sit Pros. Mr. Fernandez has violated the terms of his trade secrets and confidentiality agreement by failing to return Pet Sit Pros' manuals and clients lists upon his departure and using the trade secrets to open his own competing business.

41. Pet Sit Pros is informed and believes that Defendants are using the Pet Sit Pros trademark to confuse or trick potential customers into thinking that Pet Sitting Professionals, LLC is affiliated with Pet Sit Pros, an award-winning company, and thereby siphoning away significant amounts of revenue from Pet Sit Pros.

42. Pet Sit Pros received numerous phone calls from potential clients asking for references for Mr. Fernandez. Pet Sit Pros is informed and believes that Defendants are passing themselves off as a Pet Sit Pros franchise who licensed the

1  right to use the Pet Sit Pros trademark, when in fact, they are not a franchisee of Pet
2  Sit Pros and have no right to use its trademark. Instead, Mr. Fernandez created a
3  company with a very similar name and very similar website address, which offers
4  the same services, to make potential clients think he and his company are affiliated
5  with Pet Sit Pros. Pet Sit Pros is informed and believes that Defendants are
6  misleading clients and exploiting Pet Sit Pros' brand recognition and reputation for
7  their own benefit.

8      43.  The Pet Sitting Professional, LLC's Yelp profile and website both state
9  that it offers services in Long Beach, Seal Beach, Sunset Beach, San Pedro, Palos
10 Verdes, Rancho Palos Verdes and the South Bay. Pet Sit Pros' franchisee offers
11 services in many of these same areas.

12     44.  For the past several months, Defendants have been running a paid
13 advertising campaign on Yelp.com. When clients search for the best pet sitter or
14 dog walker in the Long Beach area, the number one natural ranking is "Pet Sit Pros
15 – The Pet Sitting & Dog Walking Professionals," but immediately above the listing
16 is the paid advertising for The Pet Sitting Professionals. Pet Sit Pros believes that
17 this creates large amounts of confusion among potential clients and many have
18 selected this paid advertisement over the Pet Sit Pros listing, mistaking them as the
19 same company, given the similar names and websites. Pet Sit Pros has seen a large
20 drop in viewers on the company's Yelp profile since The Pet Sitting Professionals,
21 LLC started running its ads directly above Pet Sit Pros' listing.

22     45.  Pet Sit Pros is informed and believes that Defendants use of a similar
23 business name and almost identical URL was intentional and designed to siphon
24 away new business using the Pet Sit Pros' mark and brand reputation, to steal
25 existing clients away from Pet Sit Pros by making people believe they have a
26 license to use Pet Sit Pros' mark as a franchisee, or to do damage to Pet Sit Pros'
27 businesses reputation by causing clients and potential clients to believe they are
28 affiliated with Pet Sit Pros.

46. Defendants' actions have caused significant and ongoing financial damage to Pet Sit Pros.

## FIRST CLAIM FOR RELIEF

**Trademark Infringement Under Lanham Act § 32**

**15 U.S.C. § 1114**

**(As to All Defendants)**

47. Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

48. Defendants' wrongful use of the names Pet Sitting Professionals and Pet Sitting Pros constitutes an infringement of Plaintiff's registered trademark "Pet Sit Pros" and is likely to cause confusion, mistake and deception of the public as to the identity and origin of Pet Sit Pros' products and services, causing irreparable harm to Plaintiff, for which there is no adequate remedy at law.

49. By reason of the foregoing acts, Defendants are liable to Pet Sit Pros for Trademark Infringement under 15 U.S.C. § 1114.

## SECOND CLAIM FOR RELIEF

**Unfair Competition Under Lanham Act § 43**

**15 U.S.C. § 1125(a)**

**(As to All Defendants)**

50. Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

51. Defendants' use of Pet Sit Pros' mark to promote, market or sell its products or services in direct competition with Pet Sit Pro's products and services constitutes Unfair Competition pursuant to 15 U.S.C. § 1125(a). Defendants' use of Pet Sit Pro's mark is likely to cause confusion, mistake and deception among consumers. Defendants' unfair competition has caused and will continue to cause

damage to Pet Sit Pros, and is causing irreparable harm to Pet Sit Pros for which there is no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### False Description Under Lanham Act § 43

### 15 U.S.C. § 1125(a)

### (As to All Defendants)

52. Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

53. Defendants' wrongful use of Pet Sit Pros' mark is such a colorable imitation and copy of Pet Sit Pros' trademark established in the pet walking, boarding and care market in the Los Angeles County area that Defendants' use thereof in the context of pet walking, boarding and care services is likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection or association of Pet Sit Pros' products and services, or to deceive consumers as to the origin, sponsorship or approval by Pet Sit Pros of the Defendants' counterfeit products and services.

54. Pet Sit Pros avers that Defendants' use of the marks "Pet Sitting Professionals" and "Pet Sitting Pros" constitutes a false description or representation of Defendants' business or products under 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act).

## FOURTH CLAIM FOR RELIEF

### Common Law Injury To Business Reputation

### (As to All Defendants)

55. Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

56. Pet Sit Pros alleges that Defendants' wrongful use of Pet Sit Pros'

trademark inures to and creates a likelihood of injury to Pet Sit Pros' business reputation because persons encountering Pet Sit Pros and its products and services will believe that Pet Sit Pros is affiliated or related to or has the approval of Defendants, and any adverse reaction by the public to Defendants and the quality of its products and the nature of its business will injure the business reputation of Pet Sit Pros and the goodwill that it enjoys in connection with its mark "Pet Sit Pros."

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. The Defendants, Pet Sitting Professionals, LLC, Francisco Javier Fernandez, and DOES 1 through 25, and their agents, officers, employees, representatives, successors, assigns, attorneys and all other persons acting for, with, by, through or under authority from Defendants, and each of them, be preliminarily and permanently enjoined from:

    a. Using Pet Sit Pros' trademark, or any colorable imitation thereof;

    b. Using any trademark that imitates or is confusingly similar to, or is in any way similar to Pet Sit Pros' trademark "Pet Sit Pros," or that is likely to cause confusion, mistake, deception, or public misunderstanding as to the origin or Pet Sit Pros' products and services or their connectedness to Defendants.

2. That the Defendants be required to file with the Court and serve on Plaintiff, within thirty (30) days after entry of the Injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the Injunction;

3. That, pursuant to 15 U.S.C. § 1117, Defendants be held liable for all damages suffered by Plaintiff resulting from the acts alleged herein;

4. That, pursuant to 15 U.S.C. § 1117, Defendants be compelled to account to Plaintiff for any and all profits derived by them from their illegal acts

complained of herein;

5.   That the Defendants be ordered, pursuant to 15 U.S.C. § 1118, to deliver up for destruction all signs, prints, advertising, promotional material or the like in the possession, custody or under the control of Defendants bearing a trademark found to infringe on Pet Sit Pros' trademark rights, as well as all plates, molds, dies, masters and other means of making the same;

6.   For damages not less than $1,000,000, and to the extent permitted by law;

7.   That the Court declare this to be an exceptional case and award Plaintiff its full costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

8.   That the Court grant Plaintiff any other remedy to which it may be entitled as provided for in 15 U.S.C. §§ 1116 and 117 or under state law; and,

9.   For such other and further relief as the Court deems just and proper.

Dated: August 2, 2016        **LAW OFFICES OF AMY YEH**

By: _____/s/_____
AMY YEH
Attorneys for Plaintiff
PET SIT PROS, INC.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable before a jury.

Dated: August 2, 2016        **LAW OFFICES OF AMY YEH**

By: _____/s/_____
AMY YEH
Attorneys for Plaintiff
PET SIT PROS, INC.

14

COMPLAINT FOR TRADEMARK INFRINGEMENT; UNFAIR COMPETITION;
FALSE DESCRIPTION; INJURY TO BUSINESS REPUTATION